RICHARD KNAAK, Individually and on Behalf of )    Case No.: 19-cv-952
All Others Similarly Situated,    )
     ) **CLASS ACTION COMPLAINT**
     )
      Plaintiff,    )
     )
     v.    )
     ) **Jury Trial Demanded**
UNIFUND CCR, LLC, KOHN LAW FIRM, S.C.,    )
GLOBAL CREDIT & COLLECTION CORP., and    )
DISTRESSED ASSET PORTFOLIO III, LLC,    )
     )
      Defendants.    )
     )

## INTRODUCTION

1.     This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, ch. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2.     The court has jurisdiction to grant the relief sought by Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337 and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3.     Plaintiff Richard Knaak is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.     Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him debts allegedly incurred for personal, family, or household purposes, namely a personal credit card.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that he allegedly engaged in consumer credit transactions – purchases of household goods and services with a personal credit card.

6. Defendant Global Credit & Collection Corp. ("GCC") is a debt collection agency with its principal offices located at 5440 North Cumberland Avenue, Suite 300, Chicago, Illinois 60656.

7. GCC is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. GCC is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. GCC is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

10. Defendant Kohn Law Firm, S.C. ("Kohn") is a law firm with its principal offices located at 735 North Water Street #1300, Milwaukee, WI 53202.

11. Kohn is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

12. Kohn is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

13. Kohn is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

14. Defendant Unifund CCR, LLC ("Unifund") is a debt collection agency with its principal offices located at 10625 Techwoods Circle, Cincinnati, OH 45242.

2

15.     Unifund is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

16.     Unifund is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

17.     Unifund is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

18.     Defendant Distressed Asset Portfolio III, LLC ("DAP III") is a foreign limited liability company with its primary offices located at principal offices located at 10625 Techwoods Circle, Cincinnati, OH 45242.

19.     Unifund and DAP III are related entities.

20.     Upon information and belief, DAP III purchases and owns consumer debts and Unifund collects those debts on behalf of DAP III.

21.     The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 172984 (M.D. Pa. Oct. 19, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697 *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'").

3

22.     Upon information and belief, the primary purpose of Unifund and DAP III's business is purchasing and collecting consumer debts that are in default at the time of purchase.

23.     Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added). On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

24.     Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

25.     DAP III is a "merchant" as defined in the WCA, as it has, or claims to have, taken assignment of Plaintiff's former consumer credit card account, originally owed to Citibank, N.A. ("Citibank"). Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.").

26.     The WCA's debt collection chapter applies to all persons collecting consumer debts, including those collecting debts owed to themselves. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

4

27.    The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

28.    DAP III uses ordinary collection methods such as mail and telephone communications, third-party debt collectors, including Unifund, Global Credit & Collection Corp., Kohn Law Firm, and civil lawsuits to collect allegedly defaulted debts that have been assigned to them.

29.    A company meeting the definition of a "debt collector" is vicariously liable for the actions of a second company collecting debts on its behalf.  *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

30.    DAP III is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *Plaintiff's Citi Diamond Preferred Card*

31.    On or about February 1, 2017, Plaintiff's "Citi Diamond Preferred Card" credit card account, issued by Citibank, went into default.

5

32.    On or about January 4, 2017, Citibank mailed Plaintiff an account statement regarding an alleged debt owed to Citibank for Plaintiff's "Citi Diamond Preferred Card" credit card account.  A copy of this account statement is attached to this complaint as <u>Exhibit A</u>.

33.    <u>Exhibit A</u> contains the following:

**RICHARD R KNAAK**
Member Since 2011  Account number ending in: 0793
Billing Period: **12/06/16-01/04/17**

How to reach us
**www.citicards.com**
1-800-823-4086 TTY: 1-800-325-2865
BOX 6500 SIOUX FALLS, SD 57117

| | |
|---|---|
| Minimum payment due: | $2,312.17 |
| New balance: | $6,865.85 |
| Payment due date: | 02/01/17 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $35 and your APRs may be increased up to the variable Penalty APR of 29.99%.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 20 year(s) | $17,157 |

For information about credit counseling services, call 1-877-337-8188.

**Your account is past due.** Please pay at least the minimum payment due, which includes a past due amount of $1297.40 and an overlimit amount of $765.85.

**Account Summary**

| | |
|---|---|
| Previous balance | $6,684.93 |
| Payments | -$0.00 |
| Credits | -$0.00 |
| Purchases | +$0.00 |
| Cash advances | +$0.00 |
| Fees | +$35.00 |
| Interest | +$145.92 |
| **New balance** | **$6,865.85** |

**Credit Limit**

| | |
|---|---|
| Credit limit | $6,100 |

Includes $1,500 cash advance limit

34.    <u>Exhibit A</u> states that, as of January 4, 2017, Plaintiff's account had a "New Balance" of $6,865.85, with a "Minimum payment due" of $2,312.17 and a "Payment due date" of February 1, 2017.

35.    On or about February 3, 2017, Citibank mailed Plaintiff an account statement regarding the same alleged debt.  A copy of this account statement is attached to this complaint as <u>Exhibit B</u>.

6

36. <u>Exhibit B</u> contains the following:

**RICHARD R KNAAK**
Member Since 2011  Account number ending in: 0793
Billing Period: 01/05/17-02/03/17

How to reach us
www.citicards.com
1-800-823-4086 TTY: 1-800-325-2865
BOX 6500 SIOUX FALLS, SD 57117

| | |
|---|---|
| Minimum payment due: | $7,015.92 |
| New balance: | $7,015.92 |
| Payment due date: | 03/01/17 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $35 and your APRs may be increased up to the variable Penalty APR of 29.99%.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 1 month(s) | $7,016 |

For information about credit counseling services, call 1-877-337-8188.

**Your account is past due.** Please pay at least the minimum payment due, which includes a past due amount of $1546.32 and an overlimit amount of $915.92.

**Account Summary**

| | |
|---|---|
| Previous balance | $6,865.85 |
| Payments | -$0.00 |
| Credits | -$0.00 |
| Purchases | +$0.00 |
| Cash advances | +$0.00 |
| Fees | +$0.00 |
| Interest | +$150.07 |
| **New balance** | **$7,015.92** |

**Credit Limit**

| | |
|---|---|
| Credit limit | $6,100 |
| Includes $1,500 cash advance limit | |

37. <u>Exhibit B</u> states that, as of February 3, 2017, Plaintiff's account had a "New Balance" of $7,015.92, with a "Minimum payment due" of $7,015.92 and a "Payment due date" of March 1, 2017.

### *Sale of Plaintiff's Account to Distressed Asset Portfolio III, LLC*

38. On or about March 30, 2018, Citibank mailed a letter to Plaintiff informing him that his debt to Citibank with the account number with the last four digits 0793 had been sold to "Distressed Asset Portfolio III, LLC" ("DAP III"). A copy of this letter is attached to this complaint as <u>Exhibit C</u>.

39. <u>Exhibit C</u> states that, when Plaintiff's Citibank account with the last four digits 0793 was sold to DAP III, the balance of the account was $6,865.85.

### *Debt Collection Letters and Small Claims Action*

40. On or about May 16, 2018, Unifund mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "DISTRESSED ASSET PORFOLIO III, LLC," ("DAP III")

7

which listed Citibank as the original creditor. A copy of this letter is attached to this complaint as Exhibit D.

41.     Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

42.     Upon information and belief, Exhibit D is a form debt collection letter used by Unifund to attempt to collect alleged debts.

43.     Upon information and belief, Exhibit D was the first debt collection letter Unifund mailed to Plaintiff regarding the alleged debt allegedly owed to DAP III.

44.     Exhibit D contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that a debt collector send within five days of the initial communication:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

45.     Exhibit D also contains the following:

Original Creditor Account Number: ██████████0793
Original Creditor: CITIBANK, NA
Original Creditor Address: CITIBANK CUSTOMER SERVICE PO BOX 6500, SIOUX FALLS, SD 57117
Current Creditor to Whom the Debt is Owed: DISTRESSED ASSET PORTFOLIO III, LLC
Balance Placed: $6,865.85
Original Creditor Last Payment Date: 07/01/2016

46.     Exhibit D states that, as of May 16, 2018, Plaintiff's account with DAP III had a "Balance Placed" of $6,865.85.

47.     Exhibit D further states that the "Last Payment Date" for the original creditor's account was 07/01/2016.

48.     On or about July 13, 2018, Global Credit Collection Corp. ("GCC") mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "DISTRESSED ASSET

8

PORFOLIO III, LLC," ("DAP III") which lists Citibank as the original creditor. A copy of this letter is attached to this complaint as Exhibit E.

49.     Upon information and belief, Exhibit E is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

50.     Upon information and belief, Exhibit E is a form debt collection letter used by GCC to attempt to collect alleged debts.

51.     Upon information and belief, Exhibit E was the first debt collection letter GCC mailed to Plaintiff regarding the alleged debt allegedly owed to DAP III.

52.     Exhibit E contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that a debt collector send within five days of the initial communication:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment, if any, and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

53.     Exhibit E contains the following:

| Original Creditor: | CITIBANK, NA |
| Current Creditor to Whom the Debt is Owed: | DISTRESSED ASSET PORTFOLIO III, LLC |
| Card Number Ending in: | ************0793 |
| Global ID: | 3259 |
| Amount Owing: | $6,865.85 |

54.     Exhibit E also contains the following:

DISTRESSED ASSET PORTFOLIO III, LLC has purchased the above referenced account and is entitled to the full balance due. Their servicer, has tasked Global Credit & Collection Corp. with contacting you for payment due to DISTRESSED ASSET PORTFOLIO III, LLC.

55.     Exhibit E states that, as of July 13, 2018, Plaintiff's account with DAP III had an "Amount Owing" of $6,865.85, but also states that DAP III is "entitled to the full balance due."

9

56. Exhibit B, the last statement Plaintiff received from Citi, states that the "New Balance" is $7,015.92.

57. Further, Exhibit E contains two payment "Options":

OPTION 1:
Should a settlement offer be feasible to you, we can save you a lot of money on this account! We have been authorized to settle your account in full for $5492.68 (Savings of $1373.17 off the current balance)

OPTION 2
We understand that while a settlement offer may be quite enticing, not everyone is in a financial position to take advantage of the offer. Please do not be discouraged! We can now accept $686.59 per month until the balance is paid in full or until your finances allow you to renegotiate alternate arrangements.

58. Option 1 offers to "settle' the account for a single payment of $5,492.68.

59. Option 2 offers that, because "not everyone is in a financial position to take advantage of the offer," GCC will "accept $686.59 per month until the balance is paid in full…."

60. Because "Option 2" does not specify the number of payments or the total amount to be paid, on the face of Exhibit E, it is impossible to determine whether the "balance" that is supposed to be "paid in full" pursuant to Option 2 is the $5,492.68 settlement offer balance, the $6,865.85 "Amount Owing" stated in the header in Exhibit E, or possibly even the $7,015.92 "New Balance" stated in Exhibit B.

61. On or about December 14, 2018, Kohn Law Firm ("Kohn") mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "UNIFUND CCR, LLC," ("Unifund") which listed Citibank as the original creditor. A copy of this letter is attached to this complaint as Exhibit F.

62. Upon information and belief, Exhibit F is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

63. Upon information and belief, Exhibit F is a form debt collection letter used by Kohn to attempt to collect alleged debts.

10

64. Upon information and belief, Exhibit F was the first debt collection letter Kohn mailed to Plaintiff regarding the alleged debt owed to Unifund.

65. Exhibit F contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that a debt collector send within five days of the initial communication:

NOTICE: This letter communication is from a debt collector. We are attempting to collect a debt. Any information obtained will be used for that purpose. Under the Fair Debt Collection Practices Act, unless you dispute the validity of this debt, or any portion thereof, within thirty days of receiving this notice, we will assume that this debt is valid. If you notify us in writing within the thirty-day period that this debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of the judgment (if any), and a copy of such verification or judgment will be mailed to you. Upon your written request within the thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor.

66. Exhibit F contains the following:

Re: Current Creditor to Whom the Debt is Owed: UNIFUND CCR LLC
Original Creditor: CITIBANK, NA
Original Creditor Address: CITIBANK CUSTOMER SERVICE PO BOX 6500, SIOUX FALLS, SD 571176500
Debtor: RICHARD R KNAAK
Our File Number: ■8097
Balance Due as of December 14, 2018: $6,865.85

67. Exhibit F also contains the following:

This firm has been retained to collect the above-referenced debt. If this debt is not paid in full or otherwise resolved, our client may consider additional remedies to recover the balance due. If you would like to discuss this matter, we can be reached by phone at (414) 276-0435 Monday through Thursday from 8:00 a.m. to 7:00 p.m. (CT) and Friday from 8:00 a.m. to 6:00 p.m. (CT).

68. Exhibit F states that, as of December 14, 2018, Plaintiff's account with Unifund had a "Balance Due" of $6,865.85.

69. Exhibit F further states that "If this debt is not paid in full or otherwise resolved, our client may consider additional remedies to recover the balance due."

70. Subsequently, on March 13, 2019, Kohn filed a small claims action in Milwaukee County Court, Case No. 2019SC008549 (the "Small Claims Action") on behalf of Plaintiff "UNIFUND CCR, LLC" seeking a judgment against Plaintiff in the amount of $6,865.85, exclusive of costs and fees. A copy of the complaint filed in the Small Claims Action is attached to this complaint as Exhibit G.

71. Exhibit G states the following:

**DAMAGES**

16. The plaintiff is seeking to recover from the defendant the amount set forth below, calculated as follows:

| | |
|---|---:|
| Principal, interest and fees through date of attached statement: | $7,015.92 |
| Late fees from the date of attached statement to March 4, 2019: | $.00 |
| Interest from the date of attached statement to March 4, 2019: | $.00 |
| Payments and/or credits received from the date of attached statement to March 4, 2019: | $150.07 |
| TOTAL: | $6,865.85 |

72. Exhibit G then attaches a copy of Exhibit B showing a "new balance" of $7,015.92 but claims that a payment and/or credit of $150.07 was "received" somewhere between the dates of February 3, 2017 and March 4, 2019.

73. On May 14, 2019, Unifund, represented by Kohn, was granted judgment against Plaintiff in the amount of $6,865.85 plus costs and fees.

74. A copy of the judgment/notice of entry of judgment signed on May 15, 2019 is attached to this complaint as Exhibit H.

75. The unsophisticated consumer would have no idea how much was owed on the Citibank account throughout the period between February 3, 2017, when Citibank mailed Plaintiff an account statement stating that the balance of Plaintiff's account was $7,015.92 and

12

May 15, 2019, when judgment was granted to Unifund in the amount of $6,865.85 even though Plaintiff had not made any payments on the account since July 1, 2016.

76. Exhibit B informed Plaintiff that the balance was $7,015.92 on February 3, 2017.

77. Exhibits C, D E, F, & H respectively, informed him the balance was $6,865.85 on March 30, 2018; May 16, 2018; July 13, 2018; December 14, 2018; May 15, 2019.

78. Exhibit G, on March 13, 2019, substantiates the damages claim in the Small Claims Action by attaching Exhibit B, which lists a balance of $7,015.92. However, in the filed documents, Kohn on behalf of Unifund, only seeks $6,865.85.

79. Based on the balances stated, any consumer would be confused as to the amount that was owed on the account at any given time throughout this period.

80. Moreover, Exhibit D states the "Balance Placed." Under the circumstances, any consumer would be left wondering whether the "Balance Placed" was actually the entire balance of the account, if there was a portion of the balance that had not been "placed" with Unifund, or if Citibank had retained a partial interest in the account, which accounted for the difference in the balance stated in Exhibit B and the balance stated in Exhibits C-H.

81. Only one of the amounts in the previous paragraphs can be the correct "amount of the debt." 15 U.S.C. §§ 1692e(2)(a), 1692g(a)(1); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000).

82. By arbitrarily choosing to state these balances, and by alternating between the balances stated, Exhibits C-H are false, deceptive, misleading, and confusing to the unsophisticated consumer, who would have no idea how much he actually owed on the dates the letters were sent.

13

83.     Additionally, looking at Exhibits D-H together, the unsophisticated consumer would be baffled as to whether DAP III or Unifund presently owned the debt in question.

84.     Notwithstanding any representation that Unifund is the "current creditor," Unifund often sues consumers in its own name when it is actually an assignee *for collection* with respect to consumer debts that are actually owed to its affiliated companies, like DAP III.  *See Unifund CCR Partners v. Shah*, 946 N.E.2d 885, 890 (Ill. 1st Dist. Ct. App. 2011); *Unifund CCR Partners v. Kiseong An*, Consolidated Case Nos. 1-14-0174 and 1-14-0491, 2014 Ill. App. Unpub. LEXIS 2836, at *13-14 (Ill. 1st Dist. Ct. App. 2014).

85.     A credit card debt like the alleged debt in this case is a "chose in action" that is generally freely assignable.

86.     The owner of a chose in action may transfer the entire chose in action to a third party without retaining any ownership interest, or it may bifurcate title to the chose in action by transferring only "legal" title and itself retain "equitable" title.

87.     If title is bifurcated, the transferee of legal title is an "assignee for collection" but the entity that retains equitable title is still the "creditor" of the debt as that term is generally understood.

88.     Although an assignee for collection may sue in its own name in Illinois, *see Unifund CCR Partners v. Shah*, 993 N.E.2d 518, 520 (Ill. 1st Dist. Ct. App. 2013), it cannot do so in Wisconsin.  *See, Immel v. Cent. Portfolio Control, Inc.*, No. 11-cv-424, 2011 U.S. Dist. LEXIS 123046, at *5-7 (E.D. Wis. Oct. 24, 2011) (collecting cases, discussing Wisconsin's "real party in interest" test, and concluding that "[i]n a collection action, the creditor or assignee is the real party in interest.").

89.     There was no chain-of-title attached to the small claims court collection complaint filed against Plaintiff demonstrating that Unifund was suing as the holder of equitable title rather than suing as an assignee for collection as in *Shah* and *Kiseong*, and as Exhibits D & E suggest.

90.     Exhibit E also states that "[DAP III's] servicer, [sic] has tasked Global Credit & Collection Corp. with contacting you for payment due to [DAP III]," which further indicates that Unifund was still acting as a servicing agent at the time Exhibit E was mailed.

91.     In light of the unexplained changes in the balance of the account and the identity of the creditor, the unsophisticated consumer would be confused as to both the name of the creditor and the amount of the debt upon reviewing Exhibits A-H.

92.     Unifund, DAP III, GCC, and Kohn could, should, and would have known that the unsophisticated consumer would have recently received account statements and debt collection letters stating the balance.

93.     Unifund, DAP III, GCC and Kohn could, should, and would have known that the failure to explain how or why the balance Unifund, DAP III, GCC, and Kohn were attempting to collect was inconsistent between Exhibits A-H and would confuse the unsophisticated consumer as to the amount of the debt.

94.     Unifund, DAP III, and Kohn could, should, and would have known that the unsophisticated consumer, having just received a Notice of Assignment identifying DAP III as the new owner of the account, would be confused about the identity of the creditor upon seeing that Exhibits F, G, & H identified Unifund as the creditor of the account.

95.     Exhibits D & G also contain confusing and misleading "Last Payment" information.

96.     Exhibit D (dated May 16, 2018) states an "Original Creditor Last Payment Date" payment on the account of July 1, 2016, and a "Balance Placed" of $6865.85.

97.     Exhibit G (dated March 13, 2019) states that a "payment and/or credit" of $150.07 was "received" between February 3, 2017 and March 4, 2019 which resulted in the total Unifund sought in the small claims action being $6,865.85.

98.     Plaintiff did not make any payment between February 3, 2017 and March 4, 2019.

99.     The unsophisticated consumer presented with a debt collection letter that falsely represented the account history would be materially confused and misled.  *See, e.g., Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004) (account history information is not "irrelevant" simply because the consumer can consult his own records to obtain clarification); *Smith v. Am. Revenue Corp.*, No. 04-cv-199-PRC, 2005 U.S. Dist. LEXIS 48680, at *18-19 (N.D. Ind. May 16, 2005) (same) (citing *Fields*, 383 F.3d at 566).

100.    Moreover, the unsophisticated consumer understands that the date and amount of last payment of a debt is a material aspect of the debt that appears on the consumer's credit report.  *E.g., Brancato v. Specialized Loan Servicing, LLC*, No. 15-cv-6780 (PGS)(LHG), 2018 U.S. Dist. LEXIS 96658, at *12-13 (D.N.J. June 8, 2018).

101.    In light of the confusing and inherently contradictory representations in Exhibits D & G, the consumer would feel threatened with the prospect of false information on her credit report. *Daley v. A & S Collection Assocs., Inc.*, 717 F. Supp. 2d 1150, 1155 (D. Or. 2010).

102.    The false and contradictory representations regarding the Last Paid Date is material to the consumer because it has important implications for consumer credit reporting, and also call into question whether other information in Exhibit D – including the total balance stated – was actually correct or was based on incorrect information.

103.    Additionally, the conflicting Last Payment information would leave consumers scratching their heads and wondering whether the letter was a legitimate collection effort, *Janetos*, 825 F.3d at 324-25 (observing that false or confusing account information may signal that the debt collector was not acting legitimately); *Tourgeman v. Collins Fin. Servs., Inc.* 755 F.3d 1109, 1120 (9th Cir. 2014) (same); *Derosia v. Credit Corp. Sols.*, 2018 U.S. Dist. LEXIS 50016, at *9-10 (E.D. Wis. Mar. 27, 2018) (same); *Pardo v. Allied Interstate, LLC*, 2015 U.S. Dist. LEXIS 125526, at *6 (S.D. Ind. Sept. 21, 2015); *Green v. Monarch Recovery Mgmt.*, 2015 U.S. Dist. LEXIS 98765, at *15 (S.D. Ind. July 29, 2015); *Dilallo v. Miller & Steeno, P.C.*, 2016 U.S. Dist. LEXIS 116188, at *6 (N.D. Ill. Aug. 30, 2016) (same); *Walls v. United Collection Bureau, Inc.*, 2012 U.S. Dist. LEXIS 68079, at *5-6 (N.D. Ill. May 16, 2012) (same); *Braatz v. Leading Edge Recovery Solutions, LLC*, 2011 U.S. Dist. LEXIS 123118, at *4 (N.D. Ill. Oct. 20, 2011) (same).

104.    Consumers understand that consumer fraud is rampart in the debt buying industry, where even legitimate debts may lead to fraud because they may be sold to more than one purchaser at a time:

> Americans are currently late on more than $600 billion in bills, according to Federal Reserve research, and almost one person in 10 has a debt in collectors' hands.  The agencies recoup what they can and sell the rest down-market, so that iffier and iffier debt is bought by shadier and shadier individuals.  Deception is common.  Scammers often sell the same portfolios of debt, called "paper," to several collection agencies at once, so a legitimate IOU gains illegitimate clones.

https://www.bloomberg.com/news/features/2017-12-06/millions-are-hounded-for-debt-they-don-t-owe-one-victim-fought-back-with-a-vengeance (accessed: May 20, 2019).

105.    The confusion engendered by Exhibits D & G is material because the unsophisticated consumer would be concerned about the possibility of having to pay the same debt twice, even assuming Defendants were not purposefully acting in bad faith.  *Janetos*, 825

17

F.3d at 324-25; *see also, FTC v. Swatsworth*, 2018 U.S. Dist. LEXIS 142696, at *4 (W.D.N.C. Aug. 22, 2018) ("The loan information contained in the Portfolio that Defendants purchased was falsified. . . . No legitimate 500FastCash loans were ever sold to SQ Capital or Defendants.").

### *Attorney Involvement*

106.    Additionally, Exhibit F is printed on Kohn's letterhead, which identifies the organization as "ATTORNEYS AT LAW" and is signed by "Zachary Spaciel, Attorney at Law."

107.    Exhibit F falsely implies that an attorney was meaningfully involved in the collection of the alleged debt as of the date of the letter.

108.    The unsophisticated consumer, receiving a letter from a law firm, believes that that law firm has been hired to sue the consumer, and that an attorney is personally and professionally involved in the consumer's file.

109.    The Seventh Circuit has stated: "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir.1996).

110.    "If a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file." *Id.*; *see also Clomon v. Jackson,* 988 F.2d 1314, 1320-21 (2d Cir. 1993).

111.    The Third Circuit has held that collection letters purporting to be "from an attorney" when there was no actual attorney involvement violated the FDCPA, even though the

18

letters included an attempted disclaimer of attorney involvement. *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 995 (3d Cir. 2011).

112.    Other Circuits have held that "a lawyer acting as a debt collector must notify the consumer, through a clear and prominent disclaimer in the letter, that the lawyer is wearing a 'debt collector' hat and not a 'lawyer' hat when sending out the letter."

113.    Exhibit F does not include any language in the nature of a disclaimer of attorney involvement, let alone a "clear and prominent disclaimer" like the one discussed in *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 361-62 (2d Cir. 2005).

114.    Kohn is a high-volume debt collector.

115.    Upon information and belief, at the time Exhibit F was mailed to Plaintiff and the class, no attorney had assessed the validity of the alleged debts to the standards required of an attorney.

116.    Upon information and belief, from the time that consumer debts are placed with Kohn for collection until the time that a legal complaint is drafted, the only employees of Kohn who are directly involved in the collection process of consumer debts are non-attorneys.

117.    Moreover, Kohn is frequently engaged to send collection letters to consumers with no intent that Kohn will ever file a lawsuit to collect the debt.

118.    Upon information and belief, a significant portion of Kohn's debt collection activities during that time period consists of computer-automated processes, including the sending of computer-generated form letters like Exhibit F.

119.    Upon information and belief, at the time Exhibit F was mailed to Plaintiff and the class, no attorney associated with Kohn had reviewed any documentation underlying the alleged

debts, including but not limited to any contract, payment history or any other documents establishing or evidencing the alleged debts.

120.    Upon information and belief, at the time Exhibit F was mailed to Plaintiff, no attorney associated with Kohn had reviewed anything relating to Plaintiff's account. Instead, a computer or a non-attorney assistant at Kohn or a third party mailing company generated and mailed Exhibit F as part of a batch of identical, except for personal information, form debt collection letters.

121.    Upon information and belief, at the time Exhibit F was mailed to Plaintiff and the class, no attorney associated with Kohn had exercised the professional judgment of an attorney that Plaintiff or any other class member was delinquent on his or her debt and a candidate for legal action, nor was any attorney associated Kohn meaningfully involved in the decision to send Exhibit F to Plaintiff and the class.

122.    Upon information and belief, no attorney associated with Kohn personally reviews each class member's collection letter in any meaningful sense, before the letter is mailed.

123.    Upon information and belief, no attorney associated with Kohn makes an individualized assessment of the class member's circumstances or liability, before Exhibit F is mailed to each class member.

124.    The lack of individualized assessment on the part of Kohn Law Firm even during and after the small claims action against Plaintiff was filed is supported by the facts that (1) Kohn sued on behalf of Unifund, who was not the owner of the debt as of the date of the filing of Exhibit G, according to documentation received by Plaintiff including Exhibits C-E, and (2) Kohn sued for an amount that was not the same as the balance on the statement attached to

20

substantiate damages in Exhibit G, and the reduction is only explained by claiming a "payment received" that Plaintiff never made.

125.    Plaintiff was confused by Exhibits A-H.

126.    Plaintiff read Exhibits A-H and was confused as to what the actual amount of the debt was.

127.    Plaintiff had to spend time and money investigating Exhibits A-H and the consequences of any potential responses to Exhibits A-H.

128.    Plaintiff had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Plaintiff on the consequences of Exhibits A-H.

### The FDCPA

129.    The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. Debt collection letters containing alleged misrepresentations of the character, amount or legal status of a debt, inherently create the risk of the kinds of harm the FDCPA was intended to prevent – including that the consumer will pay the wrong amount, or make a payment toward a debt that is not owed, or even decide to file bankruptcy because the consumer is under the mistaken impression that the debt is larger than it actually is or that the debt will increase rather than remain static over time. *See* 15 U.S.C. § 1692e(2)(a); *Boucher*, 880 F.3d at 368; *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 684 (7th Cir. 2017) (risk of payment resetting the statute of limitations); *Larkin v. Fin. Sys. of Green Bay Inc.,* No. 18-C-496, 2018 U.S. Dist. LEXIS 191305 (E.D. Wis. Nov. 8, 2018) (plaintiff had standing for her claim that creditor misrepresented that it maintained a credit rating for the plaintiff, even when the claim failed on the merits"); *Derosia v. Credit Corp Solutions*,

2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector [that the debt collector is licensed as a debt collector in Wisconsin] has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in *Pogorzelski*, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (door hangers left at plaintiff's residence caused plaintiffs to call debt collector); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury

22

would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

130. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. See 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

131. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

132. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of—the character, amount, or legal status of any debt."

133. 15 U.S.C. § 1692e(8) specifically prohibits: "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

134. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

135. 15 U.S.C. § 1692g(a) states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the

23

consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

136. The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

137. The debt collector must make the 15 U.S.C. § 1692g disclosures in a non-confusing manner. *See Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 317-18 (7th Cir. 2016).

138. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006):

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.

24

139.     The Seventh Circuit has also held that a debt collector may not hide the character of a debt; thus where a balance is subject to adjustments that would potentially confuse the unsophisticated consumer as to the amount and character of the debt, "one simple way to comply with § 1692e and § 1692f in this regard would be to itemize the various charges that comprise the total amount of the debt." *Fields v. Wilber Law Firm P.C.*, 383 F.3d 562, 566 (7th Cir. 2004).

140.     Where a debt collector has actual knowledge that the balance of a debt is subject to charges or adjustments that would confuse or mislead a debtor as to the character of that debt, the debt collector must provide adequate notice and disclosure as to the character of the debt. *Acik v. I.C. Sys.*, 640 F. Supp. 2d 1019, 1023-25 (N.D. Ill. Aug. 6, 2009) (applying *Fields*, 383 F.3d 562 (7th Cir. 2004)).

### *The WCA*

141.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

142.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett v. Community Credit Plan, Inc*., 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

143.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); see also § 425.301.

144.    "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

145.    To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. See Wis. Stats. § 427.104.

146.    The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. See Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

147.    Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

148.    Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. Brunton v. Nuvell Credit Corp., 785 N.W.2d 302, 314-15. In Brunton, the Wisconsin Supreme Court explicitly

adopted and followed the "unsophisticated consumer" standard, citing and discussing Gammon v. GC Servs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994). Id.

149.    Wis. Stat. § 427.104(1)(k) specifically prohibits a debt collector from using "a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney−at−law when it is not.

150.    Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

151.    Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …."

152.    Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

153.    Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

154.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

155.    Count I is brought against all Defendants.

156.    Exhibits C-H fail to state the balance of Plaintiff's account in a non-confusing manner.

157.    Exhibit B informed Plaintiff that the balance was $7,015.92 on February 3, 2017.

27

158.    _Exhibits D-F_ respectively, informed him the balance was $6,865.85 on May 16, 2018; July 13, 2018; December 14, 2018.

159.    _Exhibit G_, on March 13, 2019, substantiates the damages claim in the Small Claims Action against Plaintiff by attaching _Exhibit B_, which lists a balance of $7,015.92. However, in the filed documents, Kohn on behalf of Unifund, only seeks $6,865.85.

160.    Kohn's failure to provide any explanation for this decrease in the balance other than claiming "payments and/or credits received" that Plaintiff never made is a false, deceptive, misleading, and confusing communication in connection with the collection of the debt.  _See Fields_, 383 F.3d at 566.

161.    Unifund, DAP III, and GCC's failure to provide any explanation for why the balance sought was $6865.85 rather than the $7015.92 balance listed on Plaintiff's last statement from Citi is a false, deceptive, misleading, and confusing communication in connection with the collection of the debt.  See _Fields_, 383 F.3d at 566.

162.    Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and/or 1692g(a)(1).

### COUNT II – FDCPA

163.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

164.    Count II is brought against all Defendants.

165.    _Exhibits D-F_ fail to state the balance of Plaintiff's account in a non-confusing manner.

166.    _Exhibits D- F_ state a balance of $6,865.85 but _Exhibit B_, which Kohn attached as an exhibit in the small claims action, shows that Defendants could, should, and would have

28

known that the "Current Balance" for Plaintiff's account was higher than the balance stated in Exhibits D- F.

167. Exhibits D states an original creditor last payment date of July 1, 2016 and none of the debt collection letters indicate a payment date thereafter.

168. Based on the information in Exhibit B, Unifund, DAP III, Kohn, and GCC could, should, and would have known that balance stated by Exhibits D-F would confuse the unsophisticated consumer, who had recently received account statements letters attempting to collect the "New Balance," as to the amount of the debt. *See Fields*, 383 F.3d at 566.

169. Kohn could, should, and would have known that the unsophisticated consumer, having just received a Notice of Assignment that identified DAP III as the new creditor of the account, would be confused upon seeing Exhibit F identify Unifund as the creditor.

170. Defendants failed to provide any explanatory language or itemization of credits that would clarify why the amount of the debt had changed and what the amount of the debt actually was.

171. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and/or 1692g(a)(1), 1692g(a)(2).

## COUNT III - WCA

172. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

173. Count III is brought against all Defendants.

174. Exhibits D-F fail to state the balance of Plaintiff's account in a non-confusing manner.

29

175.    Exhibit B states that the balance is $7,015.92 but Exhibits D-F, without providing any explanation, state that the balance has decreased to $6,865.85.

176.    Defendants' failure to provide any explanation for this decrease in the balance are false, deceptive, misleading, and confusing communications that can reasonably expected to harass the debtor.  *See Fields*, 383 F.3d at 566.

177.    Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT IV - WCA

178.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

179.    Count IV is brought against all Defendants.

180.    Exhibits D-F fails to state the balance of Plaintiff's account in a non-confusing manner.

181.    Exhibits D-F fails to identify the creditor of Plaintiff's account in a non-confusing manner.

182.    The failure to state the name of the creditor and the balance of the account in a non-confusing manner is communication that can reasonably be expected to harass the debtor.

183.    Defendants violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## COUNT V - FDCPA

184.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

185.    Count V is brought against Defendant Kohn, and the Defendant who was the owner of Plaintiff's debt as of December 14, 2018.

186.    Exhibit F creates the false impression that an attorney at Kohn had personally reviewed the circumstances of Plaintiff's alleged debt and the letter itself, and "reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action," at the time that the letters were mailed to Plaintiff and class members.

187.    Before mailing Exhibit F to Plaintiff, no attorney at Kohn had any meaningful involvement with Plaintiff's alleged debt or the letters. See *Avila*, 84 F.3d at 229; *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002).

188.    Defendants thereby violated 15 U.S.C. §§ 1692e, 1692e(3), 1692e(10), and 15 U.S.C. § 1692f.

## COUNT VI – WCA

189.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

190.    Count VI is brought against Kohn and the Defendant who was the owner of Plaintiff's debt as of December 14, 2018.

191.    Exhibit F creates the false impression that an attorney at Kohn had personally reviewed the circumstances of Plaintiff's alleged debt and the letters itself, and "reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action," at the time that the letters were mailed to Plaintiff and class members.

192.    Before mailing Exhibit F to Plaintiff, no attorney at Kohn had any meaningful involvement with Plaintiff's alleged debt or the letters. See *Avila*, 84 F.3d at 229; *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002).

193.    Defendants violated Wis. Stat. § 427.104(1)(k).

## COUNT VII – FDCPA

194.     Count VII is brought against Unifund, DAP III, and Kohn.

195.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

196.     Exhibits D & G contain contradictory and confusing account information.

197.     Exhibit D states that the debt has a "Original Creditor Last Payment Date" of July 1, 2016, but Exhibit G contradicts this information by stating that a payment and/or credit was received between February 3, 2017 and March 4, 2019.

198.     Defendants violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10).

## CLASS ALLEGATIONS

199.     Plaintiff brings this action on behalf of three Classes.

200.     Class I ("Kohn Class"), consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit F to the complaint in this action, (c) between July 1, 2018 and July 1, 2019, inclusive, (d) that was not returned by the postal service, (e) seeking to collect a debt originally owed to Citibank (f) and incurred for personal, family, or household purposes.

201.     Class II ("Unifund Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit D to the complaint in this action, (c) between July 1, 2018 and July 1, 2019, inclusive, (d) that was not returned by the postal service (e) seeking to collect a debt originally owed to Citibank, (f) and incurred for personal, family, or household purposes.

202.     Class III ("Global Credit Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit E to the

complaint in this action, (c) between July 1, 2018 and July 1, 2019, inclusive, (d) that was not returned by the postal service (e) seeking to collect a debt originally owed to Citibank, (f) and incurred for personal, family or household purposes.

203.    Each Class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of each class.

204.    There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with the FDCPA and the WCA.

205.    Plaintiff's claims are typical of the claims of the members of each class.  All are based on the same factual and legal theories.

206.    Plaintiff will fairly and adequately represent the interests of the members of each class. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

207.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

208.    Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a)    actual damages;

(b)    statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  July 1, 2019

**ADEMI & O'REILLY, LLP**

By:     /s/ Mark A. Eldridge
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com